UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CRYSTAL L. MARTZ

                Plaintiff,

-vs-                                              Case No. 5:06-cv-422-Oc-10GRJ

MUNROE REGIONAL MEDICAL CENTER,
INC., and MUNROE REGIONAL HEALTH
SYSTEM, INC.,

                Defendants.
_____/

**O R D E R**

This gender and pregnancy discrimination and retaliation case is before the Court for consideration of Defendant Munroe Regional Health Systems, Inc.'s, Motion to Dismiss Count III of the Amended Complaint. (Doc. 8). The Plaintiff, who is represented by counsel, has not filed a response to the motion, and the time for responding has elapsed. Upon due consideration, and for the reasons discussed below, the Defendant's motion to dismiss is due to be granted.

**Factual Background**

The facts as alleged in the Plaintiff's Amended Complaint, (Doc. 8), are as follows. The Plaintiff, Crystal Martz, is a Caucasian female and resident of Marion County, Florida. In April 2005, Defendants Munroe Regional Medical Center, Inc., ("MRMC"), and Munroe Regional Health Systems, Inc., ("MRHS"), hired Martz as a Nurse Intern. She was soon

thereafter promoted to Advanced Nurse Intern, and was promoted again to Registered Nurse on August 29, 2005.

Prior to her promotion, on August 8, 2005, Martz notified both MRMC and MRHS that she was pregnant. At some point in September 2005, Martz's supervisor, Ken Judkns, Cardiac Catheterization Manager, asked Martz if she had any work restrictions due to her pregnancy. Martz informed Judkins that the only work-related restriction her obstetrician recommended was that she should avoid lifting over twenty (20) pounds. Judkins requested a copy of these restrictions from the physician in writing, which Martz provided to him on October 14, 2005.

On October 18, Carol Floyd, Director of Cardiovascular Services for MRMC contacted Martz regarding her work restrictions. Floyd informed Martz that her work restrictions limited her to "light duty" positions, and there were no such positions available at MRMC. Floyd further informed Martz that if the work restrictions were short term, MRMC and MRHS would keep Martz's position open. If they were long term restrictions, however, MRMC and MRHS would not keep her position open. During a subsequent meeting with her supervisors, Martz was informed by Judkins that he had previously made accommodations for pregnant employees, but that there had been several pregnancies over the past two years in his department, and he no longer wanted to make any special accommodations for pregnant employees. Judkins expressly told Martz that there was no work for her in his department because of her pregnancy and related limitations.

Martz attempted to work with a Nurse Recruiter to find another position in any department within MRMC or MRHS that would meet her work restrictions, but the Nurse Recruiter refused to return any of Martz's phone calls and did not work with her to find alternative placement.  According to Martz, the Defendants have previously given at least four other pregnant women special accommodations, such as light duty work.  Martz did not work for the Defendants again after October 18, 2005.

On November 17, 2005, Martz filed a dual charge of discrimination with the Florida Commission on Human Relations and the Equal Employment Opportunity Commission, alleging disparate treatment and constructive termination under the Florida Civil Rights Act, Fla. Stat. § 760.10, *et. seq.,* ("FCRA"),  Title VII of the Civil Rights Act of 1974, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"), the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k), ("PDA"), and the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.*, ("ADA").  On January 17, 2006, Martz received a letter from Floyd, stating that the Defendants required that Martz file a medical leave of absence request, even though Martz had not requested such a leave and had continuously attempted to return to work.  On February 23, 2006, Floyd set Martz a letter officially terminating Martz's employment with the Defendants for "failure to comply with the leave of absence policy."

### **Procedural History**

On November 6, 2006, Martz filed a complaint against the Defendants in the Fifth Judicial Circuit Court in and for Marion County, Florida, alleging violations of the FCRA,

Title VII, and the PDA.  On December 5, 2006, MRMC filed a Notice of Removal, removing the case to this Court on the grounds of federal question jurisdiction.  (Doc. 1).  Martz did not challenge removal, and instead filed an Amended Complaint the next day.  (Doc. 4).

The Amended Complaint, which controls this case, consists of three claims: (1) a claim alleging gender and pregnancy discrimination under the FCRA and Title VII; (2) a claim of retaliatory discharge under the FCRA and Title VII; and (3) a state law claim of intentional infliction of emotional distress.  (Doc. 4).  MRMC filed an answer to the Amended Complaint on December 14, 2006, (Doc. 7), and MRHS filed a partial answer that same day.  (Doc. 6).  At that time, MRHS also filed its motion to dismiss Count III, the intentional infliction of emotional distress claim.  (Doc. 8).  Martz has never responded to the motion to dismiss.

## Standard of Review

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate." Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv. 400 F.2d 465, 471 (5th Cir. 1968).  For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom.  Jackson v. Okaloosa County, Fla., 21 F.3d 1532, 1534 (11th Cir.1994); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).  Furthermore, the Court must limit its

consideration to the complaint and written instruments attached as exhibits. Fed R. Civ. P. 10(c); GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir.1993). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S.Ct. 1955, --- L.Ed.2d --- (2007). However, "while notice pleading may not require that the pleader allege a 'specific fact' to cover each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations omitted).

## Discussion

MRHS seeks dismissal of Martz's state law claim of intentional infliction of emotional distress on the grounds that she has failed to state a claim under Florida law. In order to state a cause of action for intentional infliction of emotional distress in Florida, Martz must show: "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." Williams v. Worldwide Flight Servs. Inc., 877 So.2d 869, 870 (Fla. 3rd DCA 2004). See also, Ball v. Heilig-Meyers Furniture Co., 35 F. Supp. 2d 1371, 1376 (M.D.Fla.1999); Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla.1985). MRHS contends that Martz has not established that any of the conduct allegedly taken by MRHS was sufficiently "outrageous."

In Florida, "the issue of whether or not the activities of the defendant rise to the level of being extreme and outrageous so as to permit a claim for intentional infliction of emotional distress is a legal question . . . for the court to decide as a matter of law." Vance v. Southern Bell Telephone Co., 983 F. 2d 1573, 1575, n. 7 (11th Cir. 19993); Tucci v. Smoothie King Franchises, Inc., 215 F. Supp. 2d 1295, 1303 (M. D. Fla. 2002). While there is no exhaustive or concrete list of what constitutes outrageous conduct, "Florida law imposes a very high standard on a plaintiff alleging intentional infliction of emotional distress in the employment realm[,]" and strongly disfavors this type of claim in the employment context. Scelta v. Delicatessen Support Services, Inc., 57 F. Supp. 2d 1327, 1357-58 (M. D. Fla. 1999). See also Golden v. Complete Holdings, Inc., 818 F. Supp. 1495, 1499 (M. D. Fla. 1993). "Liability has been found only where the conduct has been so outrageous in character . . . as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Metro. Life Ins. Co., 467 So.2d at 278-79.

Claims of intentional infliction of emotional distress related to employment discrimination cases have been consistently rejected as failing to meet the threshold burden. Howry v. Nisus, Inc., 910 F. Supp. 576, 580 (M. D. Fla. 1995) (citing Golden, 818 F. Supp. 1495). Conduct such as "mere insults, indignities, threats, or false accusations," will not result in liability. Williams, 877 So.2d at 870; see also De La Campa v. Grifols America, Inc., 819 So. 2d 940, 944 (Fla. 3d DCA 2002). However, "courts interpreting Florida law have allowed claims for intentional infliction of emotional distress in the

workplace to go forward, where the claims involve persistent verbal abuse coupled with repeated offensive physical contact." De La Campa, 819 So. 2d at 944.

Martz has made no allegations of physical contact. Rather, her allegations concern her involuntary placement on medical leave, the failure of MRHS to find alternative light duty employment for her, and her termination. While this type of conduct, if true, is distasteful and perhaps violates applicable discrimination laws, it does not even approach the required threshold of conduct that is outrageous, extreme, atrocious and utterly intolerable. See, e.g., De La Campa, 891 So. 2d at 944 (plaintiff failed to establish claim where she alleged severe and pervasive pattern of sexual harassment because of her sexual orientation, including: derogatory remarks, abusive acts and conduct directed at her because of her orientation and because she asserted her right to work free from discrimination, threats of termination, and exclusion from corporate social functions); Williams, 877 So.2d at 870 (plaintiff failed to state claim where he alleged that supervisors directed racial slurs at him in front of other employees, constructed records of false disciplinary incidents, did not allow him to work with other employees of same race, falsely accused him of stealing, persistently threatened him with job termination for no apparent reason, required him to perform dangerous work, and eliminated his break times). The failure of Martz, who is represented by counsel, to respond to MRHS' motion to dismiss further lends support for the conclusion that she cannot sufficiently state a claim of intentional infliction of emotional distress. Accordingly, Count III of Martz's Amended Complaint will be dismissed.

**Conclusion**

Upon due consideration, it is hereby ORDERED and ADJUDGED that Defendant Munroe Regional Health System, Inc.'s Motion to Dismiss Count III of the Amended Complaint, (Doc. 8) is GRANTED.  The Plaintiff may proceed with her claims of discrimination and retaliation, (Counts I and II), against all Defendants, and may proceed with her claim of intentional infliction of emotional distress, (Count III), against Defendant Munroe Regional Medical Center, Inc., only.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 9th day of July, 2007.

_____
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record